**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: LIPITOR (ATORVASTATIN CALCIUM) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) ) |

**MDL No. 2:14-mn-02502-RMG**

**This Document Relates to: See Schedule A**

**PFIZER'S OBJECTIONS TO JANUARY 23 AND**
**JANUARY 30, 2015 RULINGS OF MAGISTRATE JUDGE**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................................5

STANDARD OF REVIEW ......................................................................................7

ARGUMENT ..........................................................................................................9

I.      THE TRANSFEREE COURT DOES NOT HAVE AUTHORITY TO
TRANSFER THE CALIFORNIA LIPITOR ACTIONS TO CALIFORNIA
FEDERAL COURTS ......................................................................................9

II.     IT IS NOW UNDISPUTED THAT THE CALIFORNIA LIPITOR ACTIONS
WERE PROPERLY REMOVED AS A CAFA MASS ACTION ...................12

III.    THIS COURT ALSO HAS DIVERSITY JURISDICTION .............................15

        A.      McKesson Is Fraudulently Joined..........................................................15

                1.      Plaintiffs Have Done Nothing to Show or Determine That the
Individual Plaintiffs Used Lipitor Distributed by McKesson ...................16

                2.      All Claims Against McKesson Are Preempted ........................................17

                3.      Plaintiffs Fail to State a Claim Against McKesson ..................................21

                4.      Judge Marchant Misapplied the Forum Defendant Rule ..........................24

        B.      Plaintiffs Are Procedurally Misjoined ..................................................25

        C.      Removal Was Timely ...........................................................................25

CONCLUSION........................................................................................................26

i

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*AIDS Counseling & Testing Centers v. Group W Television, Inc.*,
    903 F.2d 1000 (4th Cir. 1990) ...............................................................15, 17, 18

*Animal Legal Defense Fund v. Mendes*,
    72 Cal. Rptr. 3d 553 (Cal. Ct. App. 2008) ..............................................................22

*In re Abbott Laboratories, Inc.*,
    698 F.3d 568 (7th Cir. 2012) ...............................................................13

*In re Air Crash at Tegucigalpa, Honduras, on May 30, 2008*,
    598 F. Supp. 2d 1368 (J.P.M.L. 2009)...............................................................11

*Aronis v. Merck & Co.*,
    2005 WL 5518485 (E.D. Cal. May 3, 2005) ...............................................................22

*Atwell v. Boston Scientific Corp.*,
    740 F.3d 1160 (8th Cir. 2013) ...............................................................13

*In re Avandia Marketing, Sales Practices & Products Liability Litigation*,
    2014 WL 2011597 (E.D. Pa. May 15, 2014) ...............................................................16, 17

*Barlow v. Colgate Palmolive Co.*,
    772 F.3d 1001 (4th Cir. 2014) ...............................................................17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................21

*Bennet v. CSX Transportation, Inc.*,
    2010 WL 4646250 (D.S.C. Sept. 30, 2010)...............................................................8

*Bennett v. CSX Transportation, Inc.*,
    2010 WL 4646248 (D.S.C. Nov. 8, 2010) ...............................................................7, 8

*In re Blackwater Security Consulting, LLC*,
    460 F.3d 576 (4th Cir. 2006) ...............................................................17

*Boaz v. Boyle & Co.*,
    46 Cal. Rptr. 2d 888 (Cal. Ct. App. 1995) ...............................................................23

*Carriere v. Sears, Roebuck & Co.*,
    893 F.2d 98 (5th Cir. 1990) ...............................................................20

*Carter v. Cummins Inc.*,
    2010 WL 5139842 (D.S.C. Dec. 10, 2010) ...............................................................8

*Cohens v. Virginia*,
    19 U.S. 264 (1821)...............................................................12

ii

*Cooper v. George*,
    2013 WL 2241908 (D.S.C. May 21, 2013) ........................................................... 8

*Cunningham Charter Corp. v. Learjet, Inc.*,
    592 F.3d 805 (7th Cir. 2010) ........................................................................... 12

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
    135 S. Ct. 547 (2014) ................................................................... 4, 9, 14, 25

*In re Darvocet, Darvon & Propoxyphene Products Liability Litigation*,
    939 F. Supp. 2d 1376 (J.P.M.L. 2013) ..................................................... *passim*

*In re Deep Vein Thrombosis Litigation*,
    323 F. Supp. 2d 1378 (J.P.M.L. 2004) .............................................................. 11

*Deutsche Bank National Trust Co. v. Lovett*,
    2013 WL 528759 (D.S.C. Feb. 11, 2013) ............................................................. 8

*Drager v. PLIVA USA, Inc.*,
    741 F.3d 470 (4th Cir. 2014) ........................................................................... 19

*Durham v. Lockheed Martin Corp.*,
    445 F.3d 1247 (9th Cir. 2006) ......................................................................... 14

*First Union Mortgage Corp. v. Smith*,
    229 F.3d 992 (10th Cir. 2000) ........................................................................... 8

*Flores v. Ethicon, Inc.*,
    563 F. App'x 266 (4th Cir. 2014) ............................................................. 21, 22, 23

*In re Fosamax (Alendronate Sodium) Products Liability Litigation (No. II)*,
    751 F.3d 150 (3d Cir. 2014) ........................................................................... 19

*In re Fosamax (Alendronate Sodium) Products Liability Litigation (No. II)*,
    2012 WL 181411 (D.N.J. Jan. 17, 2012) ......................................................... 17, 20

*Gaeta ex rel. A.G. v. Perrigo Pharmaceuticals Co.*,
    469 F. App'x 556 (9th Cir. 2012) ..................................................................... 19

*Giangola v. Walt Disney World Co.*,
    753 F. Supp. 148 (D.N.J. 1990) ......................................................................... 8

*In re Griseofulvin Antitrust Litigation*,
    395 F. Supp. 1402 (J.P.M.L. 1975) .................................................................... 11

*Guarino v. Wyeth, LLC*,
    719 F.3d 1245 (11th Cir. 2013) ....................................................................... 19

*Hardy v. HRM Florence, LLC*,
    2010 WL 3950726 (D.S.C. Oct. 7, 2010) ............................................................. 8

*Hayes v. Paschall Truck Lines, Inc.*,
    2010 WL 2757221 (D.S.C. July 13, 2010) ......................................................... 7-8

*Heredia v. Johnson & Johnson*,
   2014 WL 7272234 (C.D. Cal. Dec. 17, 2014) ...............................................14, 15

*Hughes v. Western MacArthur Co.*,
   237 Cal. Rptr. 738 (Cal. Ct. App. 1987) ...............................................................22

*Hunter v. Philip Morris USA*,
   582 F.3d 1039 (9th Cir. 2009) ..............................................................................20

*Jonas v. Unisun Insurance Co.*,
   230 F.3d 1352, 2000 WL 1350648 (4th Cir. 2000) ................................................8

*Korea Exchange Bank, New York Branch v. Trackwise Sales Corp.*,
   66 F.3d 46 (3d Cir. 1995).......................................................................................24

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998)................................................................................................10

*Lively v. Wild Oats Markets, Inc.*,
   456 F.3d 933 (9th Cir. 2006) ................................................................................24

*Long v. Lockheed Missiles & Space Co.*,
   783 F. Supp. 249 (D.S.C. 1992) .............................................................................8

*MG Building Materials, Ltd. v. Paychex, Inc.*,
   841 F. Supp. 2d 740 (W.D.N.Y. 2012) ................................................................26

*Massi v. Lomonaco*,
   2010 WL 2429234 (D.S.C. June 11, 2010).............................................................8

*In re Maytag Corp. Neptune Washer Products Liability Litigation*,
   333 F. Supp. 2d 1382 (J.P.M.L. 2004)..................................................................11

*McDonal v. Abbott Laboratories*,
   408 F.3d 177 (5th Cir. 2005) ...........................................................................20, 21

*Mensing v. Wyeth, Inc.*,
   658 F.3d 867 (8th Cir. 2011) ................................................................................19

*Mitchum v. USAA Federal Savings Bank*,
   2013 WL 4875032 (D.S.C. Sept. 11, 2013)............................................................8

*Moffitt v. Residential Funding Co., LLC*,
   604 F.3d 156 (4th Cir. 2010) ................................................................................12

*Morris v. PLIVA, Inc.*,
   713 F.3d 774 (5th Cir. 2013) ................................................................................19

*Mutual Pharmaceutical Co. v. Bartlett*,
   133 S. Ct. 2466 (2013).............................................................................4, 18, 19

*Oddone v. Superior Court*,
   101 Cal. Rptr. 3d 867 (Cal. Ct. App. 2009) .........................................................22

*PLIVA, Inc. v. Mensing*,
  131 S. Ct. 2567 (2011) ..................................................................4, 18, 19, 20

*In re Peanut Crop Insurance Litigation*,
  342 F. Supp. 2d 1353 (J.P.M.L. 2004) ...................................................11

*In re Peruvian Road Litigation*,
  380 F. Supp. 796 (J.P.M.L. 1974) .........................................................11

*Pinney v. Nokia, Inc.*,
  402 F.3d 430 (4th Cir. 2005) ..............................................................3, 10

*In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*,
  2013 WL 656822 (S.D. Ill. Feb. 22, 2013) .............................................22

*Ramos-Arrizon v. JP Morgan Chase Bank, N.A.*,
  2012 WL 3762455 (S.D. Cal. Aug. 28, 2012) .........................................25

*Regal Stone Ltd. v. Longs Drug Stores California, L.L.C.*,
  881 F. Supp. 2d 1123 (N.D. Cal. 2012) ..................................................24

*Ritchey v. Upjohn Drug Co.*,
  139 F.3d 1313 (9th Cir. 1998) ...............................................................20

*Romo v. Teva Pharmaceuticals USA, Inc.*,
  771 F.3d 1218 (9th Cir. 2014) ......................................................... *passim*

*Schrock v. Wyeth, Inc.*,
  727 F.3d 1273 (10th Cir. 2013) .............................................................19

*Smallwood v. Illinois Central Railroad Co.*,
  385 F.3d 568 (5th Cir. 2004) ............................................................17, 20

*Standard Fire Insurance Co. v. Knowles*,
  133 S. Ct. 1345 (2013) .......................................................................9, 13

*Stevens v. Community Health Care, Inc.*,
  2011 WL 6379298 (Mass. Super. Ct. Oct. 5, 2011) ...............................20

*Strayhorn v. Wyeth Pharmaceuticals, Inc.*,
  737 F.3d 378 (6th Cir. 2013) .................................................................19

*Teva Pharmaceuticals USA, Inc. v. Superior Court*,
  158 Cal. Rptr. 3d 150 (Cal. Ct. App. 2013), *cert. denied*,
  2015 WL 231967 (U.S. Jan. 2015) ........................................................20

*Thomas v. Lockheed Martin Corp.*,
  2006 WL 2864423 (D.S.C. Oct. 3, 2006) .................................................8

*Tucker v. McKesson Corp.*,
  2011 WL 4345166 (N.D. Cal. Sept. 14, 2011) .......................................22

*In re U.S. Healthcare*,
  159 F.3d 142 (3d Cir. 1998).....................................................................8

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
    498 F. Supp. 2d 25 (D.D.C. 2007) ........................................................10

*United States v. Wilson*,
    699 F.3d 789 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 2401 (2013).......................12

*United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial &
    Service Workers International Union, AFL-CIO, CLC v. Shell Oil Co.*,
    602 F.3d 1087 (9th Cir. 2010) ........................................................12

*Vogel v. U.S. Office Products Co.*,
    258 F.3d 509 (6th Cir. 2001) ........................................................8

*Weidman v. Exxon Mobil Corp.*,
    --- F. 3d ----, 2015 WL 103954 (4th Cir. Jan. 8, 2015)....................................21, 23

*Wiacek v. Equitable Life Assurance Society of the United States*,
    795 F. Supp. 223 (E.D. Mich. 1992)........................................................20

*Williams v. Beemiller, Inc.*,
    527 F.3d 259 (2d Cir. 2008)........................................................8

*Wright v. Dollar General Store No. 4722/Dolgencorp, LLC*,
    2014 WL 509214 (D.S.C. Feb. 7, 2014)........................................................12

*Wyeth v. Levine*,
    555 U.S. 555 (2009)........................................................20, 21

*In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Products
    Liability Litigation*,
    2010 WL 1963202 (S.D. Ill. May 14, 2010)........................................................22

*In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Relevant
    Products Liability Litigation*,
    2010 WL 3937414 (S.D. Ill. Oct. 4, 2010) ........................................................22

## Statutes, Regulations, and Rules

21 C.F.R. § 314.70........................................................19

21 U.S.C. § 331........................................................19

21 U.S.C. § 352........................................................19

21 U.S.C. § 321........................................................19

28 U.S.C. § 1332........................................................1, 2, 6, 9, 13

28 U.S.C. § 1404........................................................10

28 U.S.C. § 1407........................................................*passim*

28 U.S.C. § 1441 ........................................................24

28 U.S.C. § 1447...................................................................................................12, 24

28 U.S.C. § 636.........................................................................................................7

Cal. Civ. Proc. Code § 404.1 ...............................................................................2, 5

Fed. R. Civ. P. 11....................................................................................................16

Fed. R. Civ. P. 20....................................................................................................25

Fed. R. Civ. P. 60  ..................................................................................................16

Fed. R. Civ. P. 72......................................................................................................7

## Miscellaneous

S. Rep. No. 109-14 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 41.................................9

14C Charles A. Wright et al., Fed. Prac. & Proc. Juris. § 3731 (4th ed. 2009)............................26

## PRELIMINARY STATEMENT

The motions to remand decided by Judge Marchant concern more than 3,000 individual Lipitor Plaintiffs—nearly three quarters of the total number of Plaintiffs in this MDL—who hail from around the country and whose claims were filed in California state court, many in actions of 50 or more Plaintiffs each.  [*See, e.g.*, Dkts. 267, 268, 269]  By dividing these 3,000 claims into separate complaints, Plaintiffs sought to avoid the threshold for "mass action" jurisdiction under the Class Action Fairness Act ("CAFA"), which applies where the claims of 100 or more persons are "proposed to be tried jointly."  28 U.S.C. § 1332(d)(11).  Plaintiffs further sought to prevent removal by naming the California-based distributor McKesson Corporation in *every action*, even while they allege it distributed only a third of all prescriptions for Lipitor.  And they sprinkled Delaware and New York Plaintiffs in their multi-plaintiff complaints to frustrate complete diversity against Pfizer.

But despite their efforts to avoid federal court, Plaintiffs created a CAFA mass action by requesting coordination of their 3,000-some claims before one judge in California state court. The Ninth Circuit recently made clear, in an *en banc* decision that Pfizer submitted but that Judge Marchant did not address in his order,[1] that a California coordination request virtually identical to the one made by Plaintiffs here supported removal and federal jurisdiction under CAFA's mass action provisions.  Specifically, in *Romo v. Teva Pharmaceuticals USA, Inc.*, 771 F.3d 1218 (9th Cir. 2014),[2] which follows similar decisions by the Seventh and Eighth Circuits, the Ninth Circuit held that plaintiffs have proposed a joint trial for purposes of mass action

---

[1]    Although Judge Marchant has labeled his rulings "order," he has recommended that any objections be submitted to this Court "for a de novo review and final disposition."  (*See* 1/23/15 Order [Dkt. 715] ("Order") at 26-27.)  Accordingly, and as outlined more fully under "Standard of Review," *infra*, the ruling is more appropriately treated as a "Report and Recommendation" subject to de novo review by this Court.  In addition, while these objections apply both to Judge Marchant's January 23 and January 30 rulings [Dkts. 715, 737], Pfizer cites only the January 23 ruling for the sake of convenience and because these rulings are substantively identical.

[2]    *Romo* was decided with a companion case, *Corber v. Xanodyne Pharmaceuticals, Inc.*, which is the case name used in Pfizer's notice of supplemental authority.  [Dkt. 664]

1

removal where (1) they request coordination "for all purposes," since that "must include the purposes of trial"; and (2) they request coordination to avoid "inconsistent judgments and conflicting determinations of liability." *Id.* at 1223-24. Here, as in *Romo*, Plaintiffs requested coordination of all California Lipitor actions under California Code of Civil Procedure section 404.1 before "one judge . . . for all purposes" to avoid inconsistent judgments on ultimate substantive issues. Following the decision in *Romo*, mass action jurisdiction over the California Lipitor actions was therefore clear and undisputed. Indeed, Plaintiffs did not even respond or object to Pfizer's submission of *Romo* and a subsequent district court decision applying it under similar circumstances as supplemental authorities that directly support a finding of federal jurisdiction under CAFA.

Yet in deciding Plaintiffs' motions to remand, Magistrate Judge Marchant apparently did not consider *Romo* and Pfizer's supplemental submissions on it. He declined even to consider whether this Court has jurisdiction over these actions under CAFA, a decision committed to this Court by the JPML's decision to transfer these thousands of plaintiffs to this MDL for resolution of common jurisdictional questions. He instead ordered that the California Lipitor Plaintiffs' claims be transferred back to the California federal courts from which they were transferred by the JPML.

Pfizer respectfully submits that this ruling misinterprets the rules and case law governing CAFA jurisdiction and MDL procedure. Judge Marchant correctly noted that while CAFA prohibits transfer of a mass action "to any other court pursuant to section 1407" absent the consent of a majority of plaintiffs, *see* 28 U.S.C. § 1332(d)(11)(C)(i), the JPML has held that the transfer of a mass action to an MDL for the MDL court to address CAFA jurisdictional issues is proper if the removing party has also asserted an alternative basis for federal jurisdiction. *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 939 F. Supp. 2d 1376, 1381 (J.P.M.L. 2013). However, Judge Marchant erroneously concluded that because he was rejecting Pfizer's alternative grounds for jurisdiction—here, traditional diversity jurisdiction based on fraudulent joinder and procedural misjoinder—he was required to send the California Lipitor actions back

to the transferor courts. Judge Marchant's ruling not only lacks support in the removal and JPML statutes and relevant case law, but it would also frustrate the objectives of the MDL statute and the JPML by essentially creating a series of sister MDLs in other federal courts, which would together dwarf this MDL proceeding. This Court can and should decide the question of CAFA jurisdiction and Judge Marchant's ruling should be reversed for three principal reasons.

*First*, by ordering a transfer of these actions back to the transferor district courts in California, Judge Marchant usurped the JPML's exclusive authority under 28 U.S.C. § 1407 and effectively reversed the Panel's decision to transfer these actions to this MDL. Indeed, as the JPML explained in *Darvocet*, "jurisdictional issues, such as a claimed lack of diversity . . ., do not present an impediment to transfer, as plaintiffs can present such arguments to the transferee judge," who is best positioned to decide them in an efficient manner. 939 F. Supp. 2d at 1377. Judge Marchant failed to discharge that function of MDL transfer and instead purported to reverse the transfer itself. But as the Fourth Circuit has held, "once a case is transferred [pursuant to § 1407], *only the JPML, and not the transferee court*, has the authority to remand the case to the transferor court." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 452 (4th Cir. 2005) (emphasis added). Neither CAFA nor the JPML statute and procedures require or contemplate the transfer to the various federal courts in California, and the ruling should therefore be reversed.

*Second*, Judge Marchant should have decided the propriety of CAFA mass action removal and should have found subject matter jurisdiction. Initially, it is plain that mass action removal was proper for the reasons noted by the Ninth Circuit in its *en banc* decision in *Romo*. Pfizer filed the *Romo* decision as supplemental authority, explaining why it applied directly and supported a finding of jurisdiction here. [Dkt. 664] Pfizer also filed a notice of supplemental authority regarding a recent district court decision applying *Romo* and finding CAFA jurisdiction under indistinguishable circumstances. [Dkt. 694] Plaintiffs neither responded nor objected to these supplemental submissions, but Judge Marchant did not consider or refer to them in his decision. Indeed, his decision indicated the *Romo* decision had not been issued. (*See* Order at 3

3

n.6.)  And although his ruling acknowledged the Supreme Court's recent decision in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014), which Pfizer also submitted as a supplemental authority and in which the Supreme Court held that no presumption against removal applies under CAFA, Judge Marchant nevertheless applied a presumption against removal.  These recent legal developments confirm that this Court has jurisdiction under CAFA, an issue the JPML already determined this MDL Court can and should decide.

*Third*, if this Court is inclined to consider alternative grounds of jurisdiction, it should find that diversity jurisdiction exists over all of the Lipitor Plaintiffs who are diverse from Pfizer because neither the fraudulent joinder of McKesson, the sole California Defendant, nor the procedural misjoinder of Plaintiffs can destroy that diversity.   Plaintiffs' claims against McKesson do not withstand scrutiny under the fraudulent joinder standard because: (1) Plaintiffs have demonstrated—by not pursuing and indeed resisting discovery related to McKesson—that they have no real intent to proceed against McKesson; (2) Plaintiffs' claims against McKesson are preempted under the Supreme Court's decisions in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), and *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013); and (3) Plaintiffs have not pled a bare minimum of facts against McKesson, including facts that connect McKesson to Plaintiffs' alleged injuries.  Judge Marchant misapprehended the case law and the pleadings in rejecting these arguments.  In addition, although this Court previously held that it would revisit the possibility of jurisdictional discovery as to whether Plaintiffs in fact ingested Lipitor distributed by McKesson, Judge Marchant apparently did not consider that ruling and rejected diversity jurisdiction without allowing discovery.  Finally, Judge Marchant's conclusion regarding the procedural misjoinder doctrine was erroneous for the same reasons set forth in Pfizer's objection to Judge Marchant's ruling in *Hoffman v. Pfizer Inc.*, 2:14-cv-02253-RMG, which is pending before this Court.  [Dkt. 364]

The Court should therefore reverse Magistrate Judge Marchant's ruling and deny Plaintiffs' motions to remand because it can and should find that it has subject matter jurisdiction over each of the California Lipitor actions.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about September 25, 2013, 21 plaintiffs in eight actions filed an amended petition for coordination with the California Judicial Council under California Code of Civil Procedure section 404.1 seeking the coordination before "[o]ne judge . . . for all purposes" of all California state-court actions alleging development of type II diabetes from Lipitor.  (Am. Pet. for Coord. [Dkt. 267-2] at 6-7 (the "Petition" or "Am. Pet.") (quoting Cal. Civ. Proc. Code § 404.1).)  The Petition encompassed the eight actions listed therein, as well as "all subsequent LIPITOR actions."  (*Id.*)  The Petition stated that the Lipitor actions satisfied "the criteria codified" in section 404.1, citing the presence of "common questions of fact or law" and the need to avoid "duplicative and inconsistent rulings, orders or judgments" (Am. Pet. [Dkt. 267-2 at 7-8] at 6-7) on "issues pertaining to liability, allocation of fault and contribution, as well as the same wrongful conduct of defendants," which Plaintiffs contended "weigh[ed] heavily in favor of coordination."  (Points & Authorities in Support of Pet. for Coord. [Dkt. 267-2 at 61] at 8.)

On December 6, 2013, the California Judicial Council granted the petition, and the Hon. Jane L. Johnson was later selected to preside over the Lipitor litigation, captioned *In re Lipitor Cases*, JCCP No. 4761.  During a status conference before Judge Johnson on February 25, 2014, the petitioning plaintiffs identified numerous additional cases to be coordinated (see Table of Cases [Dkt. 347-6]), as contemplated by the Petition itself.  (*See* Am. Pet. at 7; Zukin Supp. Decl. [Dkt. 347-3], ¶¶ 4, 6.)  By early March 2014, the Lipitor cases coordinated or proposed to be coordinated embraced the claims of approximately 3,000 plaintiffs.  On March 3, 2014, Plaintiffs' leadership in the California Lipitor Coordination submitted a proposed order streamlining procedures for adding cases to the coordinated proceeding and stating that "[a]ll cases filed in California state court against Pfizer, Inc. . . . alleging injuries related to the development of Type II diabetes . . . arising from the ingestion of Lipitor®, are assigned to the Honorable Jane L. Johnson, Los Angeles Superior Court for coordination purposes."  (Proposed Amended Order re Add-On Procedures [Dkt. 347-8], ¶ 2.)  After Judge Johnson entered that order, Plaintiffs served a notice of entry making clear in the caption that the coordination was

5

"for All Purposes." (Notice of Entry of Amended Order re Add-On Procedures [Dkt. 347-9] at 1.)

Beginning on March 12, 2014, Pfizer removed nearly 100 California state-court Lipitor actions, involving approximately 3,000 plaintiffs, to federal courts in the Central, Eastern, and Northern Districts of California. These removals were filed shortly after the Ninth Circuit granted rehearing *en banc* in *Romo v. Teva Pharmaceuticals USA, Inc.* to determine whether such a California coordination petition gives rise to federal mass action jurisdiction under CAFA. Pfizer filed motions to stay pending transfer to this MDL and the decision in *Romo*, which were granted without exception.

Plaintiffs objected to Pfizer's attempt to have these cases transferred to this MDL on the grounds that CAFA provides that mass actions shall not "be transferred to any other court pursuant to section 1407." 28 U.S.C. § 1332(d)(11)(C)(i). However, in June 2014, the JPML held that under its decision in *Darvocet*, "this prohibition is not an impediment to transfer where," as was the case here, "other grounds for federal jurisdiction also are asserted." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig. (No. II)*, MDL No. 2502, [Dkt. 443] at 1 (J.P.M.L. June 6, 2014). It further held that transfer to the Lipitor MDL was warranted because "Plaintiffs do not dispute that their actions share multiple factual issues with those already in the MDL." *Id.* at 2.

Following transfer to this Court, Plaintiffs filed motions to remand, which this Court referred to Judge Marchant. Pfizer then moved for leave to take limited jurisdictional discovery on whether these Plaintiffs had actually received Lipitor distributed by McKesson. This Court denied that request without prejudice, holding that it would "revisit the issue of jurisdictional discovery" if it subsequently determined that "the existence of subject matter jurisdiction turns solely on whether McKesson distributed the Lipitor ingested by Plaintiffs." (CMO 11 [Dkt. 312] at 4.)

On November 18, 2014, while Plaintiffs' remand motions remained pending, the Ninth Circuit issued its en banc decision in *Romo*, holding that a removable mass action results where

Plaintiffs request state-court coordination "for all purposes" and to avoid inconsistent judgments. 771 F.3d at 1223-24. Pfizer promptly filed a notice of supplemental authority submitting *Romo* in support of its opposition to Plaintiffs' remand motions. [Dkt. 664] Plaintiffs did not respond.

On January 23, 2015, Judge Marchant issued the first of the rulings under review here, suggesting that this Court transfer the California Lipitor actions to the various California federal courts to which they had been removed. Judge Marchant puzzlingly stated that he declined to "defer ruling . . . until the Ninth Circuit issues its en banc ruling in *Romo*," though the decision had been issued and submitted as supplemental authority. (Order at 3 n.6.) Judge Marchant issued a substantively identical ruling as to a handful of additional cases on January 30, 2015. [Dkt. 737] Pfizer now timely objects to both rulings.

## STANDARD OF REVIEW

As noted above, the relief ordered by Judge Marchant was not a remand to state court based on a jurisdictional determination, but rather a transfer to other federal courts. Whether viewed as a remand ruling or a transfer ruling, it amounts to a dispositive determination that is subject to de novo review by this Court. A magistrate judge is not empowered to resolve dispositive motions but instead may propose findings and recommendations for final disposition by a district judge. Fed. R. Civ. P. 72(b)(1); 28 U.S.C. § 636(b)(1)(B). If a party timely objects to a magistrate judge's resolution of a dispositive motion, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

Because Judge Marchant has recommended that his ruling be subject to "de novo review and final disposition" by this Court, it is effectively a Report and Recommendation rather than a final order on the motion. (Order at 26-27.) Where a magistrate judge in this District designates a ruling on a transfer motion for de novo review by the district court, the district judge reviews any objections de novo. *See, e.g.*, *Bennett v. CSX Transp., Inc.*, 2010 WL 4646248, at *1 (D.S.C. Nov. 8, 2010); *Hayes v. Paschall Truck Lines, Inc.*, 2010 WL 2757221, at *1 n.1 (D.S.C.

7

July 13, 2010); *Massi v. Lomonaco*, 2010 WL 2429234, at *1 (D.S.C. June 11, 2010); *Thomas v. Lockheed Martin Corp.*, 2006 WL 2864423, at *1 n.1 (D.S.C. Oct. 3, 2006).  Although Judge Marchant has given this Court discretion to apply a clear error or a de novo standard of review, a ruling that "preserves the prerogative of . . . the presiding District Judge to determine whether to review the [magistrate judge's] opinion under a de novo or clearly erroneous standard of review," *Bennet v. CSX Transp., Inc.*, 2010 WL 4646250, at *2 (D.S.C. Sept. 30, 2010), is "only a recommendation to the Court" and should be subject to de novo review.  *See Bennett*, 2010 WL 4646248, at *1.

To the extent Judge Marchant's jurisdictional determinations are in the nature of a remand ruling, they too are dispositive and therefore subject to de novo review.  Because remand is "'the equivalent of a dismissal,'" the effect of a remand motion is that of a dispositive motion. *Long v. Lockheed Missiles & Space Co.*, 783 F. Supp. 249, 250 (D.S.C. 1992) (quoting *Giangola v. Walt Disney World Co.*, 753 F. Supp. 148, 152 (D.N.J. 1990)); *accord Carter v. Cummins Inc.*, 2010 WL 5139842, at *2-3 (D.S.C. Dec. 10, 2010) (holding that remand was dispositive and conducting de novo review, citing *Long* and appellate precedent from other circuits).[3]  Thus, this Court should conduct de novo review of the Order.

---

[3]   Every circuit court that has addressed the question has held that remand orders are dispositive.  *See In re U.S. Healthcare*, 159 F.3d 142, 145 (3d Cir. 1998) ("An order of remand simply cannot be characterized as nondispositive as it preclusively determines the important point that there will not be a federal forum available to entertain a particular dispute."); *see also Williams v. Beemiller, Inc.*, 527 F.3d 259, 265-66 (2d Cir. 2008); *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 515-17 (6th Cir. 2001); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995-96 (10th Cir. 2000); *cf. Jonas v. Unisun Ins. Co.*, 230 F.3d 1352, 2000 WL 1350648, at *1 (4th Cir. 2000) (table) (noting that "this court has not addressed whether a magistrate judge may issue an order of  remand").  In addition, magistrate judges in this District regularly submit reports and recommendations on remand motions, and district judges review any objections de novo.  *See, e.g.*, *Mitchum v. USAA Fed. Sav. Bank*, 2013 WL 4875032, at *1 n.1 (D.S.C. Sept. 11, 2013) (applying de novo standard of review to magistrate judge's report and recommendation on remand); *Cooper v. George*, 2013 WL 2241908, at *1 (D.S.C. May 21, 2013); *Deutsche Bank Nat'l Trust Co. v. Lovett*, 2013 WL 528759, at *1 (D.S.C. Feb. 11, 2013); *Hardy v. HRM Florence, LLC*, 2010 WL 3950726, at *1 (D.S.C. Oct. 7, 2010).  As these courts have recognized, prudential concerns also weigh in favor of treating the Magistrate Judge's order as a report and recommendation.

Further, in evaluating subject matter jurisdiction under CAFA, this Court should not apply any presumption against removal. As the Supreme Court has recently held, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) ("CAFA's primary objective" is to "ensur[e] 'Federal court consideration of interstate cases of national importance.'" (citation omitted)); *see also* S. Rep. No. 109-14, at 43 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 41 (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant")). Although Judge Marchant acknowledged *Dart* in his ruling (Order at 4-5 n.7), he did not apply it because he declined to decide CAFA jurisdiction.

## ARGUMENT

**I.    THE TRANSFEREE COURT DOES NOT HAVE AUTHORITY TO TRANSFER THE CALIFORNIA LIPITOR ACTIONS TO CALIFORNIA FEDERAL COURTS**

Purporting to follow the JPML's decision in *Darvocet*, Judge Marchant held that, "having determined that all bases for removal of these actions other than as a CAFA 'mass action' are without merit, . . . transfer of these cases to this MDL is not allowed." (Order at 25.) Judge Marchant then held that these cases should be transferred back to the California federal courts for a determination of the propriety of CAFA removal. (*Id.*) This ruling was erroneous and should be reversed.

As a threshold matter, determinations of MDL transfer—both transfer to an MDL and transfer back from an MDL to a transferor court—are the exclusive province of the JPML. This Court can neither reverse the JPML's transfer decision nor, on its own, effect a transfer of these cases back to the transferor district courts. Judge Marchant construed the relevant provision of CAFA as restricting an MDL court's ability to retain jurisdiction over a mass action, but the provision in fact restricts *transfer* "pursuant to section 1407," a matter that was not before this Court. 28 U.S.C. § 1332(d)(11)(C)(i). Instead, section 1407 itself provides that determinations

regarding such transfer "shall be made *by the [JPML]*" and that if a case is to be transferred out of the MDL, it shall "be remanded *by the [JPML]* . . . to the district from which it was transferred."  28 U.S.C. § 1407(a) (emphasis added).

Thus, only the JPML, not this Court, has the authority both to determine whether the California Lipitor actions may be part of this MDL—as it already did in transferring them here in June 2014—and to decide whether and when to remand these actions to the transferor courts. Indeed, the Fourth Circuit has specifically rejected the notion that an MDL transferee court may override a JPML transfer order: "[O]nce a case is transferred [pursuant to § 1407], *only the JPML, and not the transferee court*, has the authority to remand the case to the transferor court." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 452 (4th Cir. 2005) (emphasis added) (citing *In re Roberts*, 178 F.3d 181, 184 (3d Cir. 1999)); *see also United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 36 (D.D.C. 2007) ("Only the MDL Panel may remand a case or cases transferred under § 1407; a district court sitting as transferee court lacks that power.").  Further, only the Court of Appeals, not this Court, has the authority to review a determination to transfer an action under section 1407.  *See* 28 U.S.C. § 1407(e) ("No proceedings for review of any order of the panel may be permitted except by extraordinary writ . . . .").  Neither could the transfer contemplated by Judge Marchant be sustained under section 1404, since the Supreme Court has held that "the statutory language of § 1407 precludes a [MDL] transferee court from granting any § 1404(a) motion."  *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 41 n.4 (1998).[4]

Nor did CAFA effect a change in law that would support Judge Marchant's ruling.  As the JPML explained in the portion of its *Darvocet* ruling quoted by Judge Marchant, CAFA "clearly circumscribes *the Panel's authority to transfer* an action removed *solely* as a mass action."  939 F. Supp. 2d at 1378 (first emphasis added).  Indeed, much of the reasoning of the

---

[4]  This Court may address and grant motions for transfer under section 1404 as to cases that are directly filed in this Court, but under *Lexecon*, it may not grant such motions as to cases that were transferred to this MDL under section 1407.

*Darvocet* decision was that CAFA should not be construed in a way that "would effect a partial repeal of the authority conferred by Section 1407 without any clear indication of legislative intent to do so." *Id.* at 1380. Rather, the JPML construed the mass action limitation consistent with "CAFA's central purpose—to expand access to the federal courts for class action litigation—and the understanding that such an expansion would allow more cases to benefit from centralized proceedings under Section 1407." *Id.* at 1379. Just as there is no indication that Congress intended to limit MDL transfer where mass action removal is asserted together with other jurisdictional bases, there is also no indication that Congress vested MDL transferee courts with authority to overturn MDL transfer where they have rejected those other bases.

Following the transfer Judge Marchant has recommended would undermine the JPML's objectives and the purpose of this MDL. As the Panel has explained, "the institution of coordinated or consolidated pretrial proceedings . . . will allow a single judge to consider all venue and jurisdictional matters . . . and will thereby conserve judicial effort and prevent inconsistent rulings." *In re Griseofulvin Antitrust Litig.*, 395 F. Supp. 1402, 1403 (J.P.M.L. 1975).[5] Judge Marchant's ruling would have the opposite result by requiring a host of different courts to decide the same jurisdictional issue, and indeed, the question of mass action jurisdiction over the very same group of cases. This Court would no longer even be the center of gravity for the federal Lipitor cases: Judge Marchant's ruling would transfer to the Central District of

---

[5] *See also, e.g.*, *In re Air Crash at Tegucigalpa, Honduras, on May 30, 2008*, 598 F. Supp. 2d 1368, 1369 (J.P.M.L. 2009) ("Centralization under Section 1407 will . . . prevent inconsistent pretrial rulings, including those related to jurisdictional issues . . . ."); *In re Peruvian Road Litig.*, 380 F.Supp. 796, 798 (J.P.M.L. 1974) (ordering transfer under 1407 because "transfer of the Texas action will enable the defendants to jointly present their challenges of jurisdiction to the transferee court and eliminate the possibility of inconsistent decisions"); *In re Maytag Corp. Neptune Washer Prods. Liab. Litig.*, 333 F. Supp. 2d 1382, 1383 (J.P.M.L. 2004) ("Centralization under Section 1407 is necessary in order to . . . prevent inconsistent pretrial rulings (especially with respect to jurisdictional . . . matters), and conserve the resources of the parties, their counsel and the judiciary."); *accord In re Peanut Crop Ins. Litig.*, 342 F. Supp. 2d 1353, 1354 (J.P.M.L. 2004); *In re Deep Vein Thrombosis Litig.*, 323 F. Supp. 2d 1378, 1380 (J.P.M.L. 2004).

California 85 cases involving 2,966 Plaintiffs, more than the number that would remain before this Court.

Consistent with these precedents, this Court should therefore "decline[] to engage in the 'pointless exercise' of bouncing this case back and forth between the courts in favor of allowing this case to go forward in this federal forum where jurisdiction is proper." *Wright v. Dollar Gen. Store No. 4722/Dolgencorp, LLC*, 2014 WL 509214, at *4 (D.S.C. Feb. 7, 2014); *see also Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010) (cases "should not be shunted between court systems; litigation is not ping-pong"); *accord United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1091-92 (9th Cir. 2010).

Further, Judge Marchant's ruling also failed to fulfill this Court's duty to determine subject matter jurisdiction. It is well settled that federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821) (Marshall, C.J.). "[S]ubject matter jurisdiction must, when questioned, be decided before any other matter," *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 2401 (2013), such as the venue determination made by Judge Marchant. Indeed, a motion to remand under 28 U.S.C. § 1447(c) calls upon a court to determine whether there is federal subject matter jurisdiction; it does not require the court to determine the appropriate federal forum. In addition, under a "line of precedent . . . grounded not only in the interest of 'finality' but also in larger considerations of 'judicial economy,'" a court considering a motion to remand must consider all bases of federal jurisdiction. *See Moffitt v. Residential Funding Co., LLC*, 604 F.3d 156, 160 (4th Cir. 2010). Judge Marchant therefore erred in not deciding whether this Court has jurisdiction under CAFA.

## II.     IT IS NOW UNDISPUTED THAT THE CALIFORNIA LIPITOR ACTIONS WERE PROPERLY REMOVED AS A CAFA MASS ACTION

Under now clear authority from the Ninth Circuit in analogous cases involving California's coordination rules, this Court has CAFA mass action jurisdiction. Indeed, although

Plaintiffs initially disputed the validity of CAFA removal in these cases, they no longer appear to do so following the Ninth Circuit's decision in *Romo*.

CAFA "mass actions" are minimally diverse civil actions in which the monetary claims of more than 100 individuals "are proposed to be tried jointly." 28 U.S.C. § 1332(d)(11). Mass action removal of the California Lipitor litigation follows both the letter and the spirit of CAFA, including its "primary objective" of "ensuring 'Federal court consideration of interstate cases of national importance.'" *Knowles*, 133 S. Ct. at 1350 (citation omitted). In their motions to remand, Plaintiffs did not dispute that the amount in controversy and minimal diversity requirements for mass action removal were satisfied. They argued instead that the coordination petition did not propose joint trial. They criticized and attempted to distinguish decisions from the Seventh and Eighth Circuits authorizing mass action removal in such cases, *In re Abbott Laboratories, Inc.*, 698 F.3d 568 (7th Cir. 2012), and *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160 (8th Cir. 2013), and while the issue was still under *en banc* review in the Ninth Circuit, they argued for a different result with regard to California procedure. However, the Ninth Circuit decisively settled that issue with its decision in *Romo*.

*Romo* involved *en banc* review of a panel decision of the Ninth Circuit that had rejected CAFA mass action jurisdiction over a similar group of pharmaceutical products liability cases proposed to be coordinated in California state court. The *en banc* court reversed the panel and held 9-2 that the "Plaintiffs' petitions to coordinate actions under California Code of Civil Procedure section 404 constitute proposals for these actions to be tried jointly, making the actions a 'mass action' subject to federal jurisdiction under CAFA." 771 F.3d at 1222, 1225. The court held that there were two reasons that the petition for coordination constituted a proposal for joint trial, both of which apply equally to the California Lipitor actions: (1) the plaintiffs had requested coordination "for all purposes," which necessarily "must include the purposes of trial"; and (2) the plaintiffs had requested relief that could not be granted apart from a joint trial, specifically, the need to avoid "inconsistent judgments and conflicting determinations of liability." *Id.* at 1223-24. The very same circumstances are present in this

case: (1) Plaintiffs requested that all California state-court actions alleging development of type II diabetes from Lipitor be coordinated before "[o]ne judge . . . for all purposes"; and (2) Plaintiffs requested coordination based on what they argued was the presence of "common questions of fact or law" and the need to avoid "duplicative and inconsistent rulings, orders or judgments" (Am. Pet. [Dkt. 267-2 at 7-8] at 6-7), on "issues pertaining to liability, allocation of fault and contribution, as well as the same wrongful conduct of defendants." (Points & Authorities in Support of Pet. for Coord. [Dkt. 267-2 at 61] at 8.)

Plaintiffs have not contested the dispositive effect of *Romo* and other subsequent developments on establishing mass action jurisdiction. Pfizer submitted *Romo* as supplemental authority and explained its decisive effect in establishing subject matter jurisdiction. [Dkt. 664] Plaintiffs filed no response or objection. Pfizer then submitted the Supreme Court's decision in *Dart Cherokee Basin* as supplemental authority definitively rejecting Plaintiffs' arguments that CAFA should be strictly construed against removal. [Dkt. 686] Plaintiffs filed no response or objection.[6] Pfizer then submitted a notice of supplemental authority regarding *Heredia v. Johnson & Johnson*, 2014 WL 7272234 (C.D. Cal. Dec. 17, 2014) [Dkt. 694], in which the court vacated a remand order in light of *Romo* under circumstances that are indistinguishable from this case. The *Heredia* court explained:

> Here, Plaintiffs' Petition stated "[o]ne judge hearing all actions *for all purposes* . . . will promote the ends of justice." This is the same wording the *Corber*

---

[6] The Supreme Court's holding in *Dart Cherokee Basin* that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," 135 S. Ct. at 554, also establishes that CAFA removal was timely with regard to the nine early filed California Lipitor actions in which Plaintiffs contest timeliness of removal. Plaintiffs' timeliness argument is based on a rule, not adopted by the Fourth Circuit, that a defendant may generally not remove a case more than 30 days after it is served unless no grounds for removal were apparent from the initial pleading. However, as explained in *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006), even in jurisdictions that follow this rule, it applies only with regard to removal statutes that are strictly construed against removal. *Id.* at 1252. Just as *Durham* declined to apply this rule to the liberally construed federal officer removal statute, so also the rule does not apply to CAFA removal, as to which there is no presumption against removal. Accordingly, Pfizer timely removed these nine cases within 30 days of the date that 100 plaintiffs were subject to the coordination petition.

14

plaintiffs used.  Furthermore, Plaintiffs' Petition sought coordination because it "will avoid duplicative or inconsistent rulings, orders and judgments."  Finally, Plaintiffs argued in support of their Petition that "there exist recurring questions of law and fact concerning specific and general causation and liability."  Pursuant to *Corber,* Plaintiff's Petition proposed coordination for a joint trial, and therefore this Court has subject matter jurisdiction under CAFA's mass action provision.

*Heredia*, 2014 WL 7272234, at *4 (alterations in original) (citations omitted).  *Heredia* is precisely on point.  Once again, Plaintiffs filed no response or objection.

The propriety of mass action jurisdiction is therefore clear and undisputed.  *Romo* is controlling as to the interpretation of California's coordination statutes in the state court fora from which these cases were removed and as to the issue of CAFA mass action jurisdiction in the California federal courts to which Judge Marchant ordered that these cases be transferred.  It is also highly persuasive authority in this Court with regard to the jurisdictional effect of Plaintiffs' invocation of the California coordination statute.  This Court should therefore hold that it has subject matter jurisdiction over the California Lipitor actions under CAFA.

## III.     THIS COURT ALSO HAS DIVERSITY JURISDICTION

For the reasons set forth above, this Court has subject matter jurisdiction under CAFA. The Court need not go any further to review Judge Marchant's ruling as to the alternate bases for jurisdiction that Pfizer has identified.  Nevertheless, if the Court is inclined to do so, it should hold that Pfizer properly and timely removed these actions pursuant to traditional diversity jurisdiction, which exists when the fraudulently joined forum defendant McKesson and procedurally misjoined non-diverse plaintiffs are properly disregarded for jurisdictional purposes.

### A.     McKesson Is Fraudulently Joined

Under the fraudulent joinder doctrine, the citizenship of a non-diverse or forum defendant may be disregarded where "'there [is] no real intention to get a joint judgment, and . . . there [is] no colorable ground for so claiming.'"  *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (alterations in original; citations omitted).  Here, McKesson is fraudulently joined because (1) Plaintiffs do not really intend to prosecute their

claims against McKesson; (2) all claims against McKesson are preempted by federal law; and (3) Plaintiffs have not stated a claim against McKesson because they have not adequately pled a causal connection between McKesson and their alleged injuries.   In addition, the forum defendant rule does not support remand in the cases identified by Pfizer.

### 1.    Plaintiffs Have Done Nothing to Show or Determine That the Individual Plaintiffs Used Lipitor Distributed by McKesson

In practice, there has been perhaps no defendant more often used to avoid diversity jurisdiction than the distributor McKesson, whose California citizenship makes it a ubiquitous presence in the captions of pharmaceutical product liability complaints filed in state courts in California.  Another MDL court recently held that McKesson was fraudulently joined as to more than 3,000 plaintiffs, discerning "a lack of genuine intent to proceed with claims against McKesson":

> Although the complaints allege that McKesson is a major, national distributor of Avandia, plaintiffs acknowledge that it is not the only distributor, and counsel for plaintiffs argued that drug distribution chains are complex, making it difficult to establish that McKesson distributed the Avandia used by their clients without discovery from McKesson. . . . [T]his Court noted that to survive a motion for summary judgment, plaintiffs would need to conduct sufficient discovery to establish that individual plaintiffs had used Avandia distributed by McKesson. However, the discovery requests recently propounded . . . will not generate any information about the Avandia distribution process, *from which [plaintiffs' counsel] could attempt to establish that McKesson distributed the Avandia used by its clients.*

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 2014 WL 2011597, at *3 (E.D. Pa. May 15, 2014) (emphasis added).[7]  Consistent with the decision in *In re Avandia*, the Fourth Circuit recently held *en banc* that a district court may vacate a remand order rejecting fraudulent joinder under Rule 60(b)(3) and impose sanctions under Rule 11 where the plaintiffs later indicate in state court that they do not in fact intend to proceed against the non-diverse

---

[7]    Judge Marchant misinterpreted Pfizer's citation of *Avandia* to argue for a "weakening" of the fraudulent joinder standard.  (Order at 8.)  Pfizer did not argue that *Avandia* weakened the fraudulent joinder standard, but rather that it recognized the lack of good faith intent to proceed against McKesson.

defendant, such that the remand order has been obtained by fraud. *See Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001 (4th Cir. 2014) (en banc).

Here, Judge Marchant held that *Avandia* was distinguishable because it involved plaintiffs who had shown their lack of intent to proceed against McKesson by failing to take discovery as to whether it distributed the products they ingested. (Order at 8.) But as Pfizer argued in its opposition to remand, the very same conduct, and more, is present in these cases. Here, Plaintiffs have not simply neglected to take discovery regarding whether McKesson distributed the products they ingested, they have *actively opposed* Pfizer's efforts to take that discovery itself. [Dkt. 302] This Court recognized in CMO 11 that such "discrete . . . facts" concerning whether the non-diverse or forum defendant was involved with the product the plaintiffs ingested are relevant to determining jurisdiction. (CMO 11 [Dkt. 312] at 2 (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004)).) Judge Marchant, however, did not consider, pursuant to CMO 11, whether such jurisdictional discovery would establish jurisdiction. (*Id.* (denying jurisdictional discovery without prejudice subject to renewal if "jurisdiction turns solely on whether McKesson distributed the Lipitor ingested by Plaintiffs").) This Court should reverse the Magistrate Judge's ruling, find that Plaintiffs have "no real intention" to proceed against McKesson, *AIDS Counseling*, 903 F.2d at 1003, and, at a minimum, provide for jurisdictional discovery on the claims against McKesson to proceed.

### 2.    All Claims Against McKesson Are Preempted

This Court should also find that McKesson is fraudulently joined because all claims against it are barred by federal preemption. *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 2012 WL 181411, at *4 (D.N.J. Jan. 17, 2012) (holding claims against distributor of prescription medicines preempted). In rejecting this argument, Judge Marchant cited case law involving preemption and federal question jurisdiction. (Order at 9 (quoting *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006)).) But Pfizer has not relied on preemption based on the presence of a federal question. Rather, Pfizer has argued that

diversity jurisdiction exists because federal law preempts Plaintiffs' claims against McKesson and there is thus "no colorable ground" to hold McKesson liable.  It is therefore fraudulently joined.  *AIDS Counseling*, 903 F.2d at 1003.

Here, all of Plaintiffs' claims against McKesson are preempted because the action that state law allegedly required of McKesson is prohibited by federal law.  Judge Marchant found it significant that Plaintiffs stated several causes of action against McKesson (Order at 12), but what is critical is that all of these claims fundamentally allege that state law required McKesson to take some different action with respect to Lipitor—to change the product's warnings or design or to stop selling it.  (*See* Compl., Dkt. 347-14, ¶¶ 49-102.)

Significantly, the Supreme Court noted in its recent decision in *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013), that these three actions are in fact the only three potential avenues through which a defendant could comply with state-law product liability duties: (1) change the product's warnings; (2) change its design; or (3) stop selling it.  *See id.* at 2473-78.  The Court held in *Bartlett* that because a manufacturer of generic prescription medications could not take any of these actions without violating federal law, the claims against it were preempted.  First, a generic manufacturer cannot change the label—as the Court had previously held in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), the "duty of sameness" under the FDCA requires that the labeling that accompanies a generic prescription medication be the same as the branded version.  *See* 131 S. Ct. at 2573-75.  Second, just as the duty of sameness bars generic defendants from making an independent labeling change, it precludes an independent design change, which is also practically impossible because a pharmaceutical product "is chemically incapable of being redesigned."  *Bartlett*, 133 S. Ct. at 2475.  Third, the generic defendant's ability to "stop selling" its product cannot defeat preemption because that doctrine presumes an actor "is not required to cease acting altogether in order to avoid liability," and a contrary rule would render "impossibility pre-emption . . . 'all but meaningless.'"  *Id.* at 2477 (quoting *Mensing*, 131 S. Ct. at 2579).

18

Following *Mensing* and *Bartlett*, seven courts of appeal, including the Fourth Circuit, have affirmed dismissal of all products liability claims against generic defendants.[8]  These decisions apply equally here to bar claims against distributor defendants such as McKesson, who have even *less* control over their products than generic defendants.  McKesson is not just required to use the same labeling that the brand manufacturers do, it is *prohibited* from making *any* changes to the labeling used by the manufacturer, whether branded or generic.  *See* 21 C.F.R. § 314.70 (limiting label change authority to approved applicants, who are manufacturers).  If McKesson changed the FDA-approved labeling for Lipitor, it would be misbranding the product under federal law.  *See* 21 U.S.C. § 352.  Nor could McKesson change the design of Lipitor, as this would result in an unapproved new drug.  *Id.* § 321(p)(1); *see also Bartlett*, 133 S. Ct. at 2475 (finding design change impossible because "altered chemical would be a new drug that would require its own NDA to be marketed in interstate commerce").  Distributing a misbranded product or unapproved new drug would render McKesson liable for fines and other penalties under federal law.  *See* 21 U.S.C. §§ 331(a), (d), 333(a).  Nor can Plaintiffs charge that McKesson should have stopped selling Lipitor—that rationale fails here just as it did in *Bartlett*, for it "would render impossibility pre-emption a dead letter and work a revolution in [the Supreme] Court's pre-emption case law."  133 S. Ct. at 2470.

Judge Marchant found *Mensing* and *Bartlett* inapplicable because they involved generic manufacturers, not distributors of brand name prescription drugs.  (Order at 10.)  But Pfizer's preemption argument is not based on the regulatory status of the product McKesson distributed (brand or generic), but rather on the regulatory status of McKesson itself (a distributor as opposed to a brand manufacturer).  While a brand manufacturer like Pfizer has certain regulatory

---

[8]     *See, e.g.*, *Drager v. PLIVA USA, Inc.*, 741 F.3d 470 (4th Cir. 2014); *see also In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 751 F.3d 150 (3d Cir. 2014); *Morris v. PLIVA, Inc.*, 713 F.3d 774 (5th Cir. 2013); *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 383 (6th Cir. 2013); *Mensing v. Wyeth, Inc.*, 658 F.3d 867 (8th Cir. 2011); *Gaeta ex rel. A.G. v. Perrigo Pharm. Co.*, 469 F. App'x 556 (9th Cir. 2012); *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1276 (10th Cir. 2013); *Guarino v. Wyeth, LLC*, 719 F.3d 1245 (11th Cir. 2013).

latitude to change the warnings of its product, *see Wyeth v. Levine*, 555 U.S. 555 (2009), a distributor, just like a generic manufacturer, is prohibited by the regulations cited above from changing *anything* about the characteristics of the products it distributes.  Because McKesson "could not 'independently do under federal law what state law [allegedly] requires of it,'" courts have recognized that claims against distributors of prescription drugs are preempted.  *Fosamax*, 2012 WL 181411, at *4 (citation omitted); *accord Stevens v. Cmty. Health Care, Inc.*, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011).

Judge Marchant also rejected preemption on the ground that "a preemption defense goes to the merits of a plaintiff's case and cannot overcome the strong presumption against removal jurisdiction."  (Order at 11 (quotation omitted).)⁹  This is essentially a restatement of the "common defense rule," which does not apply here.  That rule holds that there is no fraudulent joinder based on a defense that disposes of the plaintiffs' claims against *all* defendants because such a defense goes to the merits of the action in general, rather than the propriety of joining a specific defendant.  *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009) (holding that when "preemption question requires an inquiry into the merits of the plaintiff's claims against all defendants," it "goes to the merits of the plaintiff's case" and cannot be considered in a fraudulent joinder analysis); *Smallwood*, 385 F.3d at 571.  Thus, the rule does not apply here for the simple reason that *Mensing* preemption "would not dispose 'of every claim against every defendant,'" *McDonal v. Abbott Labs.*, 408 F.3d 177, 184 (5th Cir. 2005) (citation

---

⁹  Federal courts may and should consider defenses as a basis for fraudulent joinder.  *See, e.g.*, *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 101 (5th Cir. 1990) (immunity defense); *accord Wiacek v. Equitable Life Assurance Soc'y of the U.S.*, 795 F. Supp. 223, 226-27 (E.D. Mich. 1992).  The Ninth Circuit in *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir. 1998), recognized that fraudulent joinder can be established through an affirmative defense—there, the statute of limitations—provided it is not exogenous to the cause of action.  *Id.* at 1319.  Here, preemption, like the statute of limitations, is non-exogenous; California courts apply it "through the medium of a demurrer," *id.* at 1320, "even though, technically, [it] is not part of the cause of action itself."  *Id.* at 1319; *see also, e.g.*, *Teva Pharm. USA, Inc. v. Superior Court*, 158 Cal. Rptr. 3d 150, 152-53 (Cal. Ct. App. 2013) (applying preemption on demurrer), *cert. denied*, 2015 WL 231967 (U.S. Jan. 2015).

omitted), because it would not bar all claims against Pfizer, the manufacturer of Lipitor. *See Levine*, 555 U.S. 555.

That this ruling is consistent with the reasoning of other district courts in deciding whether McKesson is fraudulently joined is immaterial. (*See* Order at 10-12.) Error, no matter how widely voiced, is still error. All claims against McKesson are preempted, and it is fraudulently joined.

### 3.    Plaintiffs Fail to State a Claim Against McKesson

Apart from preemption, McKesson is fraudulently joined because Plaintiffs have failed to state an adequate claim for relief against it. Judge Marchant rejected this argument, relying heavily on California district court decisions cited by Plaintiffs, but failing to address all but one of the decisions cited by Pfizer, including a 2014 Fourth Circuit opinion that affirmed a finding of fraudulent joinder under California pleading standards[10] in a case arising out of a medical device MDL. *See Flores v. Ethicon, Inc.*, 563 F. App'x 266, 270 (4th Cir. 2014). Judge Marchant held that Plaintiffs adequately pled at least "one potentially valid claim against McKesson" by alleging that it "was involved in the marketing and labeling of Lipitor, as well as with the packaging, . . . advertising, selling and/or distributing of Lipitor," and "fail[ed] to warn users of the dangers of this product." (Order at 15-16 (quotations omitted).)

This reasoning failed to address Pfizer's argument. Pfizer did not contend that Plaintiffs did not adequately plead McKesson's conduct, but rather that, as the Fourth Circuit held in a decision just last month, "there simply are not enough facts to connect the actions" of the defendant to the plaintiffs' alleged harm. *Weidman v. Exxon Mobil Corp.*, --- F. 3d ----, 2015 WL 103954, at *3 (4th Cir. Jan. 8, 2015). Since causation is an essential element of *every* theory Plaintiffs assert against McKesson, the failure to adequately plead that connection shows that

---

[10]    Pfizer respectfully submits that fraudulent joinder must be evaluated according to federal pleading standards as announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which require Plaintiffs to plead facts providing a basis for a plausible claim, though it acknowledges the Fourth Circuit has reached a contrary conclusion.

McKesson is fraudulently joined. Plaintiffs' bare allegations on "information and belief" that McKesson distributed the Lipitor they ingested show no more than that "McKesson is a major distributor of the drug" (among many others), and thus cannot establish the requisite causal link, as many courts have found. *Aronis v. Merck & Co.*, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005).[11]

As the Fourth Circuit explained in *Flore*s, California is a "fact pleading state," and "[a] complaint must 'state[ ] facts sufficient to constitute a cause of action' when it is given 'a reasonable interpretation, reading it as a whole and its parts in their context.'" 563 F. App'x at 270 (quoting *City of Dinuba v. Cnty. of Tulare*, 161 P.3d 1168, 1171 (Cal. 2007)). In a typical personal injury case, such as one "arising from an automobile accident," California permits the "necessary causal connection" to be pled "from the juxtaposition of the allegations of wrongful conduct and harm." *Animal Legal Def. Fund v. Mendes*, 72 Cal. Rptr. 3d 553, 559 (Cal. Ct. App. 2008) (internal quotation marks and citation omitted). However, "where the pleaded facts of negligence and injury do not naturally give rise to an inference of causation"—such as in this case, involving a complex chain of distribution of a pharmaceutical product—"'the plaintiff must plead specific facts affording an inference'" of causation. *Id.* (quoting *Christensen v. Superior Court*, 820 P.2d 181, 200 (Cal. 1991)). Other courts have held McKesson fraudulently joined under California pleading standards because "Plaintiffs' Complaints must allege causation, i.e. that McKesson was in some way responsible for the pills that caused Plaintiffs' alleged injuries," and "[t]he fact that pleadings are to be liberally construed does not dispense with this requirement." *In re Yasmin & Yaz*, 2010 WL 3937414, at *7 (citing *Hughes v. W. MacArthur Co.*, 237 Cal. Rptr. 738, 741 (Cal. Ct. App. 1987); *Oddone v. Superior Court*, 101 Cal. Rptr. 3d 867, 872-73 (Cal. Ct. App. 2009)).

---

[11]  *See also, e.g.*, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2010 WL 1963202 (S.D. Ill. May 14, 2010); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, 2010 WL 3937414 (S.D. Ill. Oct. 4, 2010); *Tucker v. McKesson Corp.*, 2011 WL 4345166 (N.D. Cal. Sept. 14, 2011); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 2013 WL 656822 (S.D. Ill. Feb. 22, 2013).

Plaintiffs' "information and belief" allegations are wholly insufficient under any standard to state a claim against McKesson. A general allegation that McKesson was involved in distribution of Lipitor is not an allegation that it distributed the Lipitor Plaintiffs ingested. For instance, Plaintiffs do not identify or allege any information about the pharmacies where they obtained Lipitor (information obviously known and available to them) or McKesson's relationship with any such pharmacies during the relevant period. In its decision in *Weidman* last month, the Fourth Circuit held that the plaintiff's allegations that the non-diverse defendant was "one of two investigators assigned to the . . . investigation into [plaintiff's] complaints" were insufficient to allege causation and rendered the defendant fraudulently joined. 2015 WL 103954, at *3. As the Fourth Circuit found in *Flores*, there is a lack of "any facts . . . that would allow a court to reasonably infer negligence of any kind on the part of" McKesson, rather than some other distributor, and McKesson is therefore fraudulently joined. 563 F. App'x at 270.

Finally, Pfizer notes that Judge Marchant predicated his fraudulent joinder analysis on cases applying California substantive law. California law does not govern the vast majority of Plaintiffs' claims here. Rather, they are governed by the law of each Plaintiff's respective home state. *Boaz v. Boyle & Co.*, 46 Cal. Rptr. 2d 888, 896 (Cal. Ct. App. 1995) (in prescription medication products liability case, holding that the place of injury in New York "and the lack of a significant California connection to those events . . . provide strong reasons to believe that a California court would look to the substantive law of New York"). Pfizer further established that 15 of the 51 jurisdictions implicated by Plaintiffs' motion to remand reject as a matter of law product liability claims like Plaintiffs' against distributors like McKesson. [Dkt. 347-15] Plaintiffs did not even attempt to defend the viability of their claims against McKesson in those jurisdictions. But Judge Marchant declined to consider Pfizer's state-specific arguments. Instead, he held that there was no misjoinder in multi-plaintiff complaints, and "as long as one of the Plaintiffs in the Complaint has a valid claim against McKesson, removal would be improper." (Order at 16-17 n.16.) Pfizer respectfully submits that this ruling disregards clear defects in Plaintiffs' pleadings that establish the fraudulent misjoinder of McKesson.

#### 4.       Judge Marchant Misapplied the Forum Defendant Rule

Judge Marchant rejected Pfizer's arguments under the forum defendant rule because he "determined that the Defendant McKesson is a properly named party Defendant, and each case also contains Plaintiffs from California." (Order at 20.)  However, this is factually incorrect.  As Pfizer stated in its opposition to remand [Dkt. 347 at 27-28], there are in fact eight cases where complete diversity exists on the face of the Complaint because *no plaintiff* is a citizen of California.[12]  In those cases, the forum defendant rule does not apply by its own terms, since it bars removal only where the in-state defendant has been "properly joined and served" at the time of removal.  *See, e.g.*, *Regal Stone Ltd. v. Longs Drug Stores Cal., L.L.C.*, 881 F. Supp. 2d 1123 (N.D. Cal. 2012) (holding that § 1441(b) prohibition against removal does not apply where the resident defendant was not served at the time of removal).  Here, as stated in its notice of removal, Pfizer removed these cases before McKesson was served, and thus the forum defendant rule is inapplicable and is no obstacle to removal.  Moreover, because the forum defendant rule is non-jurisdictional, it is subject to waiver, since "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction *must be made within 30 days* after the filing of the notice of removal."  28 U.S.C. § 1447(c) (emphasis added).  Plaintiffs in all of these actions except *Banks* failed to file a motion to remand within 30 days of removal and thus waived all objections to removal other than subject matter jurisdiction.  *See Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 941-42 (9th Cir. 2006); *Korea Exch. Bank, N.Y. Branch v. Trackwise Sales Corp.*, 66 F.3d 46, 50-51 (3d Cir. 1995).  Accordingly, regardless of whether McKesson is fraudulently joined, removal of these eight cases was proper and Judge Marchant's ruling was erroneous and should be reversed.

---

[12]      *Banks, et al. v. Pfizer Inc., et al.*, 2:14-cv-1811; *Bowser v. Pfizer Inc., et al.*, 2:14-cv-2329; *Constant v. Pfizer Inc., et al.*, 2:14-cv-2360; *Hodges v. Pfizer Inc. et al.*, 2:14-cv-2375; *Lubniewski v. Pfizer Inc., et al.*, 2:14-cv-2378; *Owens v. Pfizer Inc., et al.*, 2:14-cv-2307; *Pierce v. Pfizer Inc., et al.*, 2:14-cv-2371; and *Willis v. Pfizer Inc., et al.*, 2:14-cv-2363.

24

### B.    Plaintiffs Are Procedurally Misjoined

Judge Marchant rejected the application of the procedural misjoinder doctrine for the same reasons as in *Hoffman*, No. 2:14-2253, where his ruling is currently subject to review by this Court.  Pfizer accordingly incorporates by reference its objections to the *Hoffman* order herein.  [Dkt. 364]  In addition, Pfizer submits that the argument by Plaintiffs, adopted by Judge Marchant, that the valid claim of one Plaintiff against McKesson prevents fraudulent joinder removal as to all Plaintiffs in the Complaint further illustrates that Plaintiffs are misjoined. Indeed, the unrelated Plaintiffs in a given action share nothing in common except that they allege similar harms from the same product, a harm that arises out of numerous different individualized occurrences.  *Cf.* Fed. R. Civ. P. 20(a).  To allow this joinder will permit the very gamesmanship that the fraudulent joinder doctrine was designed to prevent and will deprive that doctrine of much of its utility, since even Plaintiffs with no valid claim against a non-diverse or forum defendant can always join their claims with an unrelated individual who has such a claim.  This rule should be rejected and Judge Marchant's ruling should be reversed.

### C.    Removal Was Timely

Judge Marchant also declined to decide Plaintiffs' allegation that removal was untimely in nine early filed Lipitor actions under the rule, adopted in some jurisdictions, that a defendant may generally not remove a case more than 30 days after it is served unless no grounds for removal were apparent from the initial pleading.  For the reasons stated in note 6, *supra*, CAFA removal of these actions was proper in light of the Supreme Court's recent decision in *Dart Cherokee Basin*.  In addition, both CAFA and traditional diversity removal were proper under the so-called "revival exception."  That rule holds that that the 30-day clock to remove resets when there is an event that "'so changes the nature of the action as to constitute substantially a new suit begun that day.'"  *Ramos-Arrizon v. JP Morgan Chase Bank, N.A.*, 2012 WL 3762455, at *3 (S.D. Cal. Aug. 28, 2012) (citation omitted).  As commentators have explained, the revival exception is "appropriate since a willingness on the part of the defendant to remain in state court to litigate a particular claim should not be interpreted as a willingness to remain in state court to

25

adjudicate an entirely different claim." 14C Charles A. Wright et al., Fed. Prac. & Proc. Juris. § 3731 (4th ed. 2009).

Other courts have held that the revival exception applies in the same circumstances present here—where a subsequent event expands the number of plaintiffs in an action and makes it removable under CAFA, since the defendant "was not previously on notice that plaintiffs would be bringing claims on behalf of thousands of individuals, with damages running into the billions of dollars." *MG Bldg. Materials, Ltd. v. Paychex, Inc.*, 841 F. Supp. 2d 740, 749 (W.D.N.Y. 2012). That is precisely the case here, where the grant of coordination, supported by Plaintiffs' counsel in this case, was followed by the mass filing of claims by approximately 3,000 plaintiffs, dramatically expanding the scope of the California Lipitor coordination, as well as the amount in controversy, so that it satisfied the requirements for removal as a CAFA mass action. This mass action is literally "a new suit begun that day," such that restarting of the removal deadline is warranted, and Pfizer was permitted to raise all available grounds of jurisdiction, including diversity, in its notice of removal. To the extent the Court determines to decide the existence of traditional diversity jurisdiction, it should find that removal of these actions was timely.

## CONCLUSION

For the foregoing reasons, the Court should reverse the January 23 and January 30 rulings of the Magistrate Judge and deny Plaintiffs' motions to remand. Pfizer submits that this Court can and should deny Plaintiffs' motions based solely on a finding that it has mass action jurisdiction under CAFA and need not consider alternate grounds. Nevertheless, should the Court decide to consider whether it has traditional diversity jurisdiction over these actions, it should find that it has diversity jurisdiction and, if necessary, allow jurisdictional discovery regarding McKesson to proceed. Pfizer respectfully requests oral argument on these matters at the Court's convenience.

DATED:  February 6, 2015

Respectfully submitted,

By:  /s/ Mark S. Cheffo
    Mark S. Cheffo
    Rachel Passaretti-Wu
    Mara Cusker Gonzalez
    Quinn Emanuel Urquhart & Sullivan, LLP
    51 Madison Avenue
    New York, NY 10010
    Telephone: (212) 849-7000
    Facsimile: (212) 849-7100
    MarkCheffo@quinnemanuel.com
    RachelPassarettiWu@quinnemanuel.com
    MaraCuskerGonzalez@quinnemanuel.com

    Michael T. Cole
    Nelson Mullins Riley & Scarborough LLP
    151 Meeting Street/Sixth Floor
    Post Office Box 1806 (29402-1806)
    Charleston, South Carolina 29401
    Telephone: (843) 853-5200
    Facsimile: (843) 722-8700
    mike.cole@nelsonmullins.com

David E. Dukes
Amanda S. Kitts
Nelson Mullins Riley & Scarborough LLP
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC  29201
Telephone: (803) 799-2000
Facsimile: (803) 256-7500
david.dukes@nelsonmullins.com
amanda.kitts@nelsonmullins.com

*Counsel for Defendant Pfizer Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, this 6th day of February, 2015, I have electronically filed a copy of the above and foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to counsel of record.

<u>s/ Mark S. Cheffo</u>